853 A.2d 124 (2004)
SENIOR TOUR PLAYERS 207 MANAGEMENT COMPANY LLC, Stanton v. Abrams and Jeffrey M. Abrams, Plaintiffs,
v.
GOLFTOWN 207 HOLDING COMPANY LLC, Defendant.
C.A. No. 20187.
Court of Chancery of Delaware, New Castle County.
Submitted: January 14, 2004.
Decided: March 10, 2004.
*125 William O. LaMotte, III, Bradley W. Voss, Andrew H. Lippstone, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for the Plaintiffs.
Duane D. Werb, Werb & Sullivan, Wilmington, DE; Daniel J. Lyne, Halye A. Sugerman, Hanify & King, Boston, MA, for the Defendant.

OPINION AND ORDER
LAMB, Vice Chancellor.

I.
The former managers of a Delaware limited liability company seek advancement of their expenses in connection with the defense of a civil action claiming that they engaged in misconduct as managers of the LLC. They rely on a contractual advancement provision found in the entity's operating agreement. Because their claim satisfies the express language of the contractual advancement provision, the plaintiffs' motion for summary judgment is granted.

II.
The plaintiffs are Senior Tour Players 207 Management Company LLC ("Senior Tour Players"), a Delaware limited liability *126 company, Stanton V. Abrams, and Jeffrey M. Abrams (collectively, the "STP Parties"). The Abramses are principals of Senior Tour Players.
Defendant is Golftown 207 Holding Company LLC ("Golftown"), a Delaware limited liability company in the business of owning, developing, managing, and selling golf driving ranges. Golftown was formed on February 28, 2001 by Paul Fireman and Senior Tour Players. Fireman and Senior Tour Players are the members of Golftown. Senior Tour Players (through the Abramses) acted as manager of Golftown until Fireman replaced it in March 2002. Fireman now controls the operations of Golftown.
Fireman sued the STP Parties in October 2002 in the Delaware Superior Court (the "Fireman Action") alleging breach of fiduciary duties, breach of contract and gross negligence in the management of Golftown.[1] After the STP Parties filed a motion to dismiss or transfer, the Fireman Action was transferred to this court.
On December 11, 2002, the STP Parties requested the advancement of fees and costs in connection with the Fireman Action pursuant to section 5.3 of the Golftown limited liability company agreement (the "Operating Agreement"). On December 20, 2002, Golftown rejected the request. The STP Parties then filed this action on March 11, 2003, asking the court to determine, in accordance with the Operating Agreement, that they are entitled to advancement of litigation expenses (including attorneys' fees) incurred in connection with the Fireman Action.
The court heard argument on the plaintiffs' motion for summary judgment on January 5, 2004. At oral argument, counsel for Golftown asserted that the right to advancement should be conditioned upon the delivery of an acceptable written undertaking to repay. The court asked the parties to submit supplemental briefing on this issue. Having considered the additional briefing, the court now concludes that the plaintiffs are entitled to the advancement of legal fees pursuant to the Operating Agreement and this right is not conditioned on their delivery of a written undertaking.

III.
Summary judgment is appropriate when there are no questions of material fact and the moving party is entitled to judgment as a matter of law.[2] In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party and the moving party has the burden of demonstrating that there is no material question of fact.[3] Summary judgment is an appropriate way to resolve advancement disputes because "the relevant question turns on the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is *127 sought."[4]

IV.

A. The Contractual Right To Advancement

Section 18-108 of the Limited Liability Company Act (the "LLCA") grants LLCs broad authority to provide for indemnification by contract in their operating agreements.[5] Moreover, section 18-1101 of the LLCA states that it is "the policy of [the LLCA] to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements."[6] Pursuant to the LLCA, paragraph 5.3 of the Operating Agreement deals with advancement and indemnification and reads in relevant part:
Any person made, or threatened to be made, a party to any action or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such Person is or was (i) a Member of the Company or a member of the Management Committee of the Company or a manager of the Company, (ii) an officer, employee or agent of a Member of the Company or of the Management Committee of the Company (or any of their affiliates) ... (collectively, the "Indemnified Persons"), shall be defended, indemnified and held harmless by the Company for any claim, liability, loss, damage, cost or expense sustained by them with respect to such action or proceeding, and the Company shall advance such Indemnified Person's related expenses, as such expenses are incurred, to the full extent permitted by law.[7]
Paragraph 5.3 provides, therefore, that the company is required to both indemnify and advance legal fees "to the full extent" that the LLCA allows. The court will look to the plain meaning of the advancement provision of the operating agreement in determining whether to award advancement.[8]

B. Golftown's Obligation to Advance Fees

Both parties concede that the Operating Agreement governs the issue of whether to award advancement in this action.[9] Golftown does not contest that the STP Parties *128 are Indemnified Persons as defined in paragraph 5.3. Golftown argues that reading paragraph 5.3 as a whole, the right to advancement, like the right to indemnification, is limited.[10] In this regard, it points to the final sentence of that paragraph, which reads:
The duty of the Company to defend, indemnify and hold the Indemnified Persons harmless hereunder shall not extend to actions or omissions of any Indemnified Person which (i) are grossly negligent, (ii) involve fraud, misrepresentation, bad faith or other willful misconduct by such Indemnified Person, (iii) are in material breach or violation of this Agreement or the agreement with the Company to which they are parties or (iv) are outside the scope of their employment with (if applicable) or authorization from the Company.
Golftown argues that the limits on indemnification found in this sentence also apply to the right to advancement.
This court has consistently held that advancement and indemnification, although obviously related, are "distinct types of legal rights"[11] and that the right to advancement is not ordinarily dependent upon a determination that the party in question will ultimately be entitled to be indemnified.[12] The only language in paragraph 5.3 that refers to advancement states, without conditions or limitations, that the company "shall advance such Indemnified Person's related expenses, as such expenses are incurred, to the full extent permitted by law." The final sentence of that provision, on which Golftown relies, applies only to "[t]he duty of the Company to defend, indemnify and hold the Indemnified Persons harmless hereunder...." The omission of the word "advancement" in this sentence evidences the parties' intent that those limitations do not apply to the right to advancement.[13]
Golftown contends that the language of the Operating Agreement differs from settled *129 Delaware law on the right to advancement because, it rather persistently argues, paragraph 5.3 expressly carves out exceptions to the right to advancement.[14] As already discussed, the court cannot entertain this interpretation of paragraph 5.3 because, by its express terms, it does not carve out any exception to the right of advancement.[15]
Finally, Golftown argues that the STP Parties should not be allowed advancement in connection with pending litigation in Massachusetts.[16] The court will not address this issue since the Massachusetts litigation is not the subject of either the complaint in this action or the original demand for advancement.

C. A Written Undertaking Is Not A Condition To Advancement

At oral argument, Golftown stated that it would be "fair for any party receiving advancement to be obligated" to execute a written undertaking to repay.[17] The court agreed to consider the possibility that such a requirement should be inferred, citing the requirement of an undertaking in certain corporate contexts as instructive of Delaware public policy on this issue.[18] The court asked the parties to submit supplemental briefs on whether an obligation to furnish a written undertaking should be implied. [19] Having received and reviewed the supplemental briefs, the court concludes that the governing statutory scheme does not support the implication of such a condition.
Notably, the LLCA, as compared to the DGCL, is entirely mute on the subject of advancement. Section 18-108 of the LLCA gives broad authority to members of LLCs to set the terms for indemnification in their operating agreements. Moreover, the broad freedom of members of LLCs to define their obligations inter sese by contract is germane to the formation and interpretation of LLC agreements.[20] Therefore, persons forming LLCs clearly have the authority to require a written undertaking as a condition to advancement. Golftown's Operating Agreement *130 requires advancement but is silent on the issue of a written undertaking.
This court has held on other occasions that advancement implies a general obligation to repay if the underlying conduct is ultimately judged to be not indemnifiable.[21] But an obligation to repay does not necessarily imply a precondition of giving a written undertaking to do so. [22] Moreover, Golftown, in its supplemental brief on this topic, does not cite any legal support for its proposition that a written undertaking should be required in the LLC context.[23] Since there is no requirement to provide a written undertaking in the Operating Agreement, the court will not read this requirement into the contract.[24]

V.
In conclusion, plaintiffs are entitled to the advancement of legal expenses in the Fireman Action pursuant to paragraph 5.3 of the Operating Agreement. Therefore, *131 plaintiffs' motion for summary judgment is granted. Additionally, plaintiffs are entitled to an award of "fees on fees" for bringing this action to enforce a contractual right to advancement.[25] IT IS SO ORDERED.
NOTES
[1] The complaint in the Fireman Action contains five counts: Count I alleges that the Abramses were grossly negligent in their duties to manage Golftown; Count II alleges that they fraudulently diverted corporate funds for their personal use; Count III alleges that they breached their fiduciary duties to Golftown and Fireman; Count IV alleges that they breached their duties of good faith and fair dealing under the Operating Agreement; and Count V alleges breach of contract against Senior Tour Players.
[2] Ct. Ch. R. 56(c). See Williams v. Geier, 671 A.2d 1368, 1375 (Del.1996).
[3] Tanzer v. Int'l Gen. Inds., Inc., 402 A.2d 382, 385 (Del.Ch.1979) (citing Judah v. Delaware Trust Co., 378 A.2d 624, 632 (Del.1977)).
[4] Weinstock v. Lazard Debt Recovery GP, LLC, 2003 WL 21843254, at *2 (Del.Ch. Aug. 1, 2003).
[5] "Subject to such standards and restrictions, if any, as are set forth in its limited liability company agreement, a limited liability company may, and shall have the power to, indemnify and hold harmless any member or manager or other person from and against any and all claims and demands whatsoever." 6 Del. C. § 18-108 (emphasis added).

Limited liability companies, like limited partnerships, are governed by a statute that gives the contracting parties broad authority in setting their indemnification provisions. The statutory language is permissive and does not per se create a right to indemnification. See 6 Del. C. § 17-108. See also Delphi Easter Partners Ltd. P'ship v. Spectacular Partners, 1993 WL 328079, at *2 (Del.Ch. Aug. 6, 1993) (granting advancement in a limited partnership setting and noting that "courts should interpret language so as to achieve where possible the beneficial purposes that indemnification can afford").
[6] 6 Del. C. § 18-1101(b).
[7] Emphasis added.
[8] "It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract. Only when there are ambiguities may a court look to collateral circumstances." Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del.1992) (citations omitted).
[9] See Walker v. Res. Dev. Co., 791 A.2d 799, 813 (Del.Ch.2000) ("Thus, LLC members' rights begin with and typically end with the Operating Agreement.").
[10] Golftown's reliance on Delaware law that contracts must be read as a whole in order to give meaning to the provisions of the contract misses the point. See Northwestern Nat'l Ins. Co. v. Esmark, Inc., 672 A.2d 41, 43 (Del.1996) (stating that the court would not entertain defendant's interpretation because "it adds a limitation not found in the contract language") (emphasis added); Qwest Communications Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 821 A.2d 323, 328 (Del.Ch.2002) (dismissing defendant's reading of the provision because it would nullify a right clearly provided for in the contract); O'Brien v. Progressive N. Ins. Co., 785 A.2d 281 (Del.2001) (dismissing appellant's interpretation because it canceled a choice provided for in the policy). Moreover, these cases confirm Delaware law that clear and unambiguous language in a contract will be given its ordinary meaning. See Rhone-Poulenc Basic Chemicals, Co. v. Am. Motorists Ins. Co., 616 A.2d 1192 (Del.1992).
[11] Nakahara v. NS 1991 Am. Trust, 739 A.2d 770, 779 (Del.Ch.1998). See Citadel, 603 A.2d at 822 (distinguishing the right to advancement from the right to indemnification); Advanced Mining Sys., Inc. v. Fricke, 623 A.2d 82, 84 (Del.Ch.1992) (distinguishing a mandate to indemnify from a mandate to advance expenses "[b]ecause I consider indemnification rights and rights to advancement of possibly indemnifiable expenses to be legally quite distinct types of legal rights...").

Moreover, a decision to advance funds pursuant to an agreement among the parties "does not ipso facto mean that the defendant companies will have to indemnify the plaintiffs." Morgan v. Grace, 2003 WL 22461916, at *3 n. 21 (Del.Ch. Oct. 29, 2003).
[12] Reddy v. Elec. Data Sys. Corp., 2002 WL 1358761, at *9 (Del.Ch. June 18, 2002) (noting that "the clear authorization of advancement rights presupposes that the corporation will front the expenses before any determination is made of the corporate official's ultimate right to indemnification").
[13] See Morgan, 2003 WL 22461916, at *3 ("The court will not rewrite those [advancement] provisions to provide for a right that the parties did not intend.").
[14] There is no principled distinction between the language of the Operating Agreement and Delaware law on this issue. See, e.g., Roven v. Citadel Holding Corp., 1990 WL 47358, at *1 (Del.Super.Apr. 3, 1990) (granting summary judgment on advancement even though the indemnification agreement expressly excluded the conduct in the underlying litigation); Ridder v. CityFed Fin. Corp., 47 F.3d 85, 87-88 (3d Cir.1995) (noting that "[u]nder Delaware law, appellants' right to receive the costs of defense in advance does not depend upon the merits of the claims asserted against them...."); Reddy, 2002 WL 1358761, at *5 (noting that "it is highly problematic to make the advancement right of [corporate] officials dependent on the motivation ascribed to their conduct ascribed by the suing parties. To do so would largely vitiate the protections afforded by [statutory] and contractual advancement rights.").
[15] See Delphi, 1993 WL 328079, at *8 (holding that advancement must be granted notwithstanding certain exceptions to the right to indemnification).
[16] Br. in Supp. of Golftown 207 Holding Co., LLC's Opp'n to Mot. for Summ. J. on Advancement Claim, at 20.
[17] Trial Tr. at 24.
[18] Section 145(e) of Delaware General Corporation Law (the "DGCL") conditions the advancement of expenses to currently serving corporate officers and directors on the receipt of an undertaking.
[19] Specifically, the court requested briefs on whether some form of promise of repayment "in the form of an undertaking and perhaps even a secured undertaking" is required by law. Trial Tr. at 28.
[20] See 6 Del. C. § 18-1101(b).
[21] "[B]y accepting payments expressly termed an `advancement,' [plaintiff] necessarily acknowledges that his ultimate right to keep those payments depends on whether his underlying conduct is indemnifiable." Reddy, 2002 WL 1358761, at *5.
[22] In Reddy, the court clearly states that an undertaking was not a condition precedent to advancement unless a company specified so in its bylaws. "The General Assembly specifically amended [ ] section [145(e)] to give corporations the flexibility to advance funds to employees and agents without an undertaking. In lieu of this required undertaking, corporations may specify by bylaw or contract the terms and conditions upon which employees and agents may receive advancement, which could include an undertaking and more onerous prerequisites to advancement." 2002 WL 1358761, at *4.
[23] Golftown points to Reddy, 2002 WL 1358761, at *5 and Advanced Mining, 623 A.2d 82, 84. In Reddy, the court held that a former employee was entitled to advancement pursuant to the corporation's bylaws, which did not require an undertaking. The court in Reddy clearly states that any condition to advancement must be specified in the corporation's bylaws or required by contract. In Advanced Mining, a corporate officer offered to give an undertaking in order to receive advancement, but the court refused to extend him advancement because there was no mandatory advancement provision in the certificate of incorporation or the bylaws. Therefore, neither Reddy nor Advanced Mining suggests that an undertaking is mandatory when it is not required by statute or contract.

Golftown further argues that since an obligation to repay advances will not negatively affect the quality of individuals serving as corporate officers or directors, then ipso facto it is required by Delaware public policy. See Fasciana v. Elec. Data Sys. Corp., 829 A.2d 160, 170 (Del.Ch.2003) (discussing how the General Assembly, in drafting the statutory guidelines for advancement and indemnity, "sought to encourage well-qualified persons to serve as directors and officers of Delaware corporations ..."). Again, Golftown provides no authority to support this argument. It cites Citadel for the proposition that a company is only required to advance reasonable legal fees. 603 A.2d 818, 824. The court fails to see how the issue of reasonableness of an advancement award is at all relevant to the question of whether a written undertaking is required. Golftown's reference to Fasciana for support is also misguided since it does not once address the issue of requiring an undertaking as a condition for advancement. Fasciana deals with the definition of "agent" for purposes of the advancement statute. 829 A.2d at 163, 168.
[24] "Having been accorded the freedom to craft its bylaws as it wished, [defendant] cannot point to its own drafting failures as a defense to [plaintiff's] advancement claim, however. If it chose, [defendant] could have conditioned former employees' advancement rights on an undertaking, proof of an ability to repay, or even the posting of a secured bond. But it did not do so." Reddy, 2002 WL 1358761, at *4. See Nakahara, 739 A.2d at 779 (noting that Delaware courts routinely construe the DGCL more strictly than statutes such as DRULPA, which are given more flexibility in authorizing indemnification).
[25] See Stifel Fin. Corp. v. Cochran, 809 A.2d 555, 561 (Del.2002) (noting that "without an award of attorneys' fees for the indemnification suit itself, indemnification would be incomplete"); Morgan, 2003 WL 22461916, at *4 (awarding "`fees on fees' to the extent [plaintiffs] were successful in their claim to enforce a contractual right to advancement").