# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

FRESH EXPRESS VEGETABLE, LLC, )
)
            Plaintiff, )
)
    v. )    C.A. No. 2025-1050-SEM (MTZ)
)
LATITUDE 36 FOODS, LLC, )
)
            Defendant. )

## ORDER REGARDING EXCEPTIONS

**WHEREAS**:

A.    On December 22, 2025, a Magistrate in Chancery issued a final report recommending the Court grant plaintiff Fresh Express Vegetable LLC ("Plaintiff") advancement from defendant Latitude 36 Foods, LLC ("Defendant" or the "Company"), on the posture of cross-motions for summary judgment.[1]

B.    On December 26, 2025, Defendant filed a notice of exceptions.[2] On January 6, 2026, the matter was assigned to the undersigned for the purpose of hearing the exceptions.[3] The parties briefed the exceptions, with the final brief submitted on March 13.[4]

---

[1] Docket item ("D.I.") 25; *see* D.I. 21; D.I. 22; D.I. 23.

[2] D.I. 24.

[3] D.I. 27.

[4] D.I. 28; D.I. 31; D.I. 32; D.I. 34.

C.     Plaintiff is one of two members of Defendant.[5]  Defendant's operative operating agreement (the "Operating Agreement") provides Plaintiff with indemnification and advancement rights, as below in relevant part:

> Section 11.4 <u>Indemnification</u>.  To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of authority conferred on such Covered Person by this Agreement . . . .

> Section 11.5 <u>Expenses</u>.  To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person in defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in ***Section 11.4*** hereof.[6]

D.     Before the Magistrate, Plaintiff and Defendant agreed Section 11.4's limitation that the action be "by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company" also conditioned Section 11.5's advancement right.[7]  Plaintiff's counsel conceded "advancement of expenses under Section 11.5 is linked to indemnification that's

---

[5] D.I. 1 Ex. A [hereinafter "OA"] at Schedule A.

[6] *Id*. §§ 11.4, 11.5.

[7] D.I. 25 at 14–15, 17; *see also* D.I. 1 ¶¶ 5, 15–16.

available to [C]overed [P]ersons under [Section] 11.4."[8] The parties' shared

understanding is consistent with this Court's interpretation in *Freeman Family*

*LLC v. Park Avenue Landing LLC*.[9]

     E.     The underlying suit for which Plaintiff seeks advancement is *Taylor*

*Fresh Foods, Inc. v. Fresh Express Vegetable, LLC, and Latitude 36 Foods, LLC*,

C.A. No. 2025-0882-NAC (the "Plenary Suit").[10] The other member of Defendant,

---

[8] D.I. 25 at 14–15.

[9] 2019 WL 1966808, at *3, *5 (Del. Ch. Apr. 30, 2019) (reading a contractual right to advancement to build on an indemnification provision limited to actions "by reason of the fact," and interpreting the advancement right to be intentionally conditioned by that language); *see* D.I. 31 at 12–15 (offering no contrary view of Delaware law). *Morgan v. Grace* read very similar provisions to provide advancement for any claim, as permitted by 6 *Del. C.* § 18-108, unconstrained by the limitations on indemnification. 2003 WL 22461916, at *2 (Del. Ch. Oct. 29, 2003). *Morgan*'s holding is narrow: it rejected an argument that advancement was not owed "because the plaintiffs would not be entitled to be indemnified if the conduct that is alleged in the Superior Court action were eventually proven to be true," as entitlement to indemnification could "only be made after the [plenary] action has been adjudicated." *Id.* This Court has also interpreted a unitary indemnification and advancement provision to provide for advancement free of the limitations on indemnification. *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldg Co., LLC*, 853 A.2d 124, 127–29 (Del. Ch. 2004).

    Advancement provisions considered in other cases explicitly condition advancement on eligibility for indemnification. *E.g.*, *White v. Curo Tex. Hldgs., LLC*, 2016 WL 6091692, at *21 (Del. Ch. Sept. 9, 2016) (explaining advancement for "any such claim" refers to a claim eligible for indemnification); *Imbert v. LCM Int. Hldg. LLC*, 2013 WL 1934563, at *3 (Del. Ch. May 7, 2013) (interpreting a clause that advances expenses in an action "with respect to which such Person is or may be entitled to indemnification"). Others repeat the limitations for indemnification and advancement. *E.g.*, *Int'l Rail P'rs LLC v. Am. Rail P'rs, LLC*, 2020 WL 6882105, at *3 (Del. Ch. Nov. 24, 2020).

[10] D.I. 1 ¶ 1. The Plenary Suit's declaratory judgment count has since been consolidated with another related case. *Taylor Fresh Foods, Inc. v. Fresh Express Vegetable, LLC, and Latitude 36 Foods, LLC*, C.A. No. 2025-0882-NAC [hereinafter "Plenary Suit"], D.I.

3

Taylor Fresh Foods, Inc., sought dissolution of Defendant under 6 *Del. C.* § 18-802.[11] That count was dismissed at the pleading stage.[12] Taylor Fresh Foods also seeks a declaratory judgment that Plaintiff breached the Company's Operating Agreement by failing to approve capital distributions and failing to timely approve the bonuses and salaries of Company employees, and that Plaintiff is not entitled to certain operational information.[13]

F.   The Company is a board-managed LLC, with two board members appointed by Plaintiff and two by Taylor Fresh Foods.[14] Many major decisions also require a supermajority vote of the Company's members.[15] Otherwise, "no Member shall have the power to act for or on behalf of, or to bind, the Company without the prior written approval of a Supermajority Vote of the Board."[16] The Plenary Suit alleges Plaintiff's board designees refused to approve certain

---

46 (consolidating *Fresh Express Vegetable, LC v. Surber*, C.A. No. 2025-0791-NAC with the Plenary Suit).

The Plenary Suit presently features a pending motion to amend the complaint to add breach of contract claims. Plenary Suit, D.I. 47. The alleged conduct is the same, so I believe it appropriate to evaluate the original complaint. *Compare* Plenary Suit, D.I. 47 Ex. 1 ¶¶ 28, 31–33, 38, 40–49, 52–53 *with* Plenary Suit, D.I. 1 [hereinafter "Compl."] ¶¶ 33–35, 42, 46–56, 59–60.

[11] Compl. ¶¶ 64–71.

[12] Plenary Suit, D.I. 42.

[13] Compl. ¶ 75.

[14] OA §§ 5.1(a), 5.2(a)(i).

[15] *Id.* § 5.1(b); *see also* Compl. ¶ 22 (claiming the composition and dynamics of the board functionally require unanimity irrespective of whether a supermajority vote is required).

[16] OA § 4.1.

4

corporate acts mandated by the Operating Agreement, unless Taylor Fresh Foods agreed to remove the Company's chief executive officer.[17] The Plenary Suit holds Plaintiff responsible for causing its designees to withhold approval.[18] In that same vein, the Plenary Suit holds Plaintiff responsible for statements made by one of its board designees.[19] The Plenary Suit also alleges Plaintiff, in its capacity as a member, withheld approval of certain major decisions.[20] Finally, the Plenary Suit alleges Plaintiff exceeded its power as a member by attempting to create a new officer position and by demanding the other member disclose its proprietary trade secrets.[21]

 G. In this action, the parties' cross-motions for summary judgment joined issue on whether the Plenary Suit is "by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company."[22] The Company interprets "on behalf of the Company" to mean acting as the Company's agent as to third parties, and argues the Plenary Suit takes issue with Plaintiff's actions taken in its capacity as a member within the Company.[23]

---

[17] Compl. ¶¶ 33–35, 45–46; *see* OA §§ 8.1–8.2.

[18] Compl. ¶¶ 33–35, 45–46.

[19] *Id*. ¶ 44.

[20] *Id*. ¶¶ 41, 43; *see* OA § 5.1(b)(ii), (x)

[21] Compl. ¶¶ 40, 42.

[22] OA § 11.4.

[23] D.I. 25 at 18–21, 32–34.

Plaintiff contends its decisions comprise key corporate actions in service to the Company, and are therefore on behalf of the Company.[24]

H. "To determine what contractual parties intended, Delaware courts start with the text."[25] "[A] court interpreting any contractual provision . . . must give effect to all terms of the instrument, must read the instrument as a whole, and, if possible, reconcile all the provisions of the instrument."[26]

**AND NOW**, on this 2nd day of April, 2026, the Court finds and orders as follows:

1. A hearing on the exceptions is unnecessary. The Court has considered this matter *de novo*. [27]

2. Dictionary definitions assist in discerning the usual and ordinary meaning of "on behalf of."[28] In defining "behalf," Black's Law Dictionary notes "on behalf of means 'in the name of, on the part of, as the agent or representative

---

[24] *Id*. at 7–10, 28–30.

[25] *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019).

[26] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) (quoting *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998)).

[27] *See DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[28] *See Horton v. Organogenesis Inc*., 2019 WL 3284737, at *4 (Del. Ch. July 22, 2019) ("Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract." (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006))); *see also Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 480 (Del. Ch. 2022) (relying on a dictionary to determine the meaning of "on behalf of" where undefined under the operative agreement).

of.'"[29]  Merriam-Webster defines "on behalf of" is "as a representative of someone" or "for the benefit of someone:  in support of someone."[30]

3.  Reading the Operating Agreement as a whole demonstrates it uses the phrase's plain meaning.  The Operating Agreement uses the phrase "on behalf of the Company" several times.  I must interpret that phrase in a way that reconciles all the provisions.[31]  Section 4.1 states, "[N]o Member shall have the power to act for or on behalf of, or to bind, the Company without the prior written approval of a Supermajority Vote of the Board."[32]  I draw two lessons from this provision.  First, Section 4.1 equates acting "on behalf of" the Company with "act[ing] for" the Company, and "bind[ing]" the Company.[33]  Second, a member cannot act "on behalf of" the Company unless and until the board formally grants the member authority to do so.

4.  The Operating Agreement's indemnification provision and its exculpation provision both limit those rights to actions taken not only on behalf of the company, but also "in a manner reasonably believed to be within the scope of

[29] *Behalf*, Black's Law Dictionary (12th ed. 2024).

[30] *On behalf of*, Merriam-Webster, https://www.merriam-webster.com/dictionary/onbehalfof (last visited April 1, 2026).

[31] *Alta Berkeley VI C.V.*, 41 A.3d at 385.

[32] OA § 4.1.

[33] *See Julius v. Accurus Aerospace Corp.*, 2019 WL 5681610, at *11 (Del. Ch. Oct. 31, 2019).

authority conferred" by the Operating Agreement.[34]  The member must be acting for or binding the Company.  And it must be reasonable to believe the member has been granted the authority to do so, which Section 4.1 explains requires a board supermajority vote and prior written approval.

5.      According to the dictionary and the Operating Agreement, a member acts "on behalf of" the Company when it acts as its representative, acting for it or to bind it, with the necessary board supermajority vote and prior written approval. The plain meaning of "on behalf of" is consistent with Section 4.1, and harmonizes Section 4.1. with the indemnification and exculpation provisions.  From a practical perspective, this interpretation draws a sensible line.[35]  The Company will pay a member's legal bills for a dispute arising out of an instance when the board authorized the member to speak for the Company.  If the board put a member out front, it follows the Company will cover that member's legal exposure.[36]  The Company will not pay legal bills a member accrued as a consequence of unauthorized acts, infighting with another member, or conduct entirely unrelated to the Company.

---

[34] OA §§ 11.2(a), 11.4.

[35] *See Fasciana v. Electronic Data Sys. Corp.*, 829 A.2d 160, 169–70 (Del. Ch. 2003).

[36] Indeed, the Company is advancing its CEO's bills for a legal action arising out of her performance on behalf of the Company.  *Fresh Express Vegetable, LC v. Surber*, C.A. No. 2025-0791-NAC.

6.     It is undisputed that the Plenary Suit does not challenge any action Plaintiff took to bind the Company, acting for the Company, or as the Company's representative.  It does not challenge any action Plaintiff took with the board's prior written approval after a supermajority vote.  It challenges the decisions of Plaintiff's board designees, and decisions Plaintiff made as a member.  To be sure, those decisions have an effect on the Company.  But Plaintiff did not act for the Company, or bind the Company, in taking them, and did not have the requisite authority from the board to act on behalf of the Company.

7.     Defendant's exceptions are **SUSTAINED**.   Plaintiff is not entitled to advancement for the Plenary Suit under the Operating Agreement.  This matter is hereby **REMANDED** to the Magistrate for any further proceedings.


_/s/ Morgan T. Zurn_
Vice Chancellor Morgan T. Zurn