# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

NATHAN BRICK,             )
                                      )

        Plaintiff,           )
                                        )

        v.                   )    C.A. No. 2020-0254-KSJM
                                        )

THE RETROFIT SOURCE, LLC,    )
TRS HOLDCO, LLC and TRS        )
MANAGEMENT, LLC,           )
                                        )

        Defendants.       )

## ORDER RESOLVING CROSS-MOTIONS FOR SUMMARY JUDGMENT

1. Plaintiff Nathan Brick served as Chief Operating Officer of Defendant The Retrofit Source, LLC ("Opco") from March 25, 2018, through January 28, 2020.[1] Brick also served as a member of the Board of Managers of TRS Holdco, LLC ("Holdco," and together with Opco, "the Companies") during that time.[2] This action concerns Brick's demands for advancement from Holdco.

2. Holdco and Opco are both Delaware LLCs.[3] Holdco is governed by the Second Amended and Restated Limited Liability Company Agreement of TRS

---

[1] C.A. No. 2020-0254-KSJM, Docket ("Dkt.") 1, Verified Compl. for Advancement ("Compl.") ¶ 8; Dkt. 15, Defs.' Answer to Verified Compl. ("Answer") ¶ 8.

[2] Compl. ¶ 8; Answer ¶ 8. TRS Management, LLC, is the remaining Defendant. That entity exists solely to own certain incentive equity interests in Holdco and does not have a separate role in Holdco's or Opco's governance. Dkt. 32, Amended Unsworn Decl. of Rick Cravey ("Cravey Decl.") ¶ 6. Brick does not argue that he is entitled to advancement from TRS Management, LLC, and thus, this decision does not address that issue.

[3] Compl. ¶¶ 4, 5; Answer ¶¶ 4, 5.

Holdco, LLC, dated as of March 29, 2019 ("Holdco LLC Agreement").[4] Opco is governed by the LLC Agreement of The Retrofit Source, LLC, dated as of March 23, 2018 ("Opco LLC Agreement").[5] Holdco owns all of the membership interests in Opco and is the Manager of Opco.[6]

3. Opco imports and sells high-end headlamps and other lighting products for automobiles.[7] Brick began working for Opco's predecessor as an independent contractor in August 2007.[8] Opco hired Brick as a full-time employee in 2011.[9] Brick became COO of Opco in late 2013.[10] Kian Capital Partners, LLC ("Kian") acquired a majority interest in Opco in March of 2018.[11] At that time, Brick entered into an employment agreement with Opco memorializing his role as COO.[12] He was also appointed to Holdco's Board of Managers (the "Holdco Board").[13]

---

[4] Cravey Decl. Ex. B.

[5] Cravey Decl. Ex. A.

[6] *Id.* at 1 (Background Statement); *id.* § 5.1.

[7] Dkt. 22, Aff. of Nathan Brick in Supp. of Pl.'s Opening Br. in Supp. of His Mot. for Summ. J. ("Brick Aff.") ¶ 6.

[8] *Id.* ¶ 2.

[9] *Id.* ¶ 4.

[10] *Id.* ¶ 5.

[11] *Id.* ¶ 17; Cravey Decl. ¶ 3.

[12] Brick Aff. ¶ 18.

[13] *Id.*

4.      As COO of Opco, Brick "was in charge of supply chain management and order fulfillment for [Opco]."[14]  According to affidavits submitted by Matthew Kossof, Opco's CEO, and Victor Jimenez, Opco's Vice President of Finance, Brick's role included: identifying and engaging Customs brokers; submitting paperwork to Customs brokers as required by U.S. Customs and Border Protection; and ensuring that all Customs duties were properly paid to the U.S. government.[15]  Brick does not dispute the nature of his role but instead contends that Kossoff was responsible for developing the Customs policies at issue and that Brick "merely executed upon the terms Kossoff had set."[16]

5.      Soon after Kian acquired its stake in Opco, the United States Trade Representative imposed special duties on imports from China, periodically increasing the dutiable rate between June 15, 2018, and May 10, 2019.[17]  Although Opco imports much of its products from China, Kian observed that Opco's profitability was relatively unaffected by these new duties, in contrast to other

---

[14] Dkt. 30, Unsworn Decl. of Victor Jimenez ("Jimenez Decl.") ¶ 3.

[15] Dkt. 30, Unsworn Decl. of Matthew Kossoff ("Kossoff Decl.") ¶¶ 14, 15, 17; Jimenez Decl. ¶ 3.

[16] Brick Aff. ¶ 7.

[17] *Id.* ¶ 19; Cravey Decl. ¶ 13.

similarly situated companies in Kian's portfolio.[18]  Kian directed Jimenez and a consultant to investigate how Opco accounted for the increased duties.[19]

6.      Jimenez discovered that Opco had been running a "double-invoicing scheme" that had caused it to underpay its Customs duties for years.[20]  The parties dispute who is to blame for the scheme, but it is undisputed that Brick played a role in carrying it out.[21]  Upon learning of the double-invoicing practices, Kian and Opco authorized a national law firm "to make a voluntary disclosure to U.S. Customs— notifying the agency that [Opco] suspected it had underpaid Customs duties and that the company was undertaking a thorough investigation to determine the amount of any potential underpayment."[22]  The law firm also conducted an audit of Opco's customs policies and summarized its findings in a report to U.S. Customs and Border Protection ("CBP") on May 4, 2020.[23]  Brick contends the CBP Proceeding "exposes employees and officers such as Brick to both civil and criminal liability."[24]

---

[18] Cravey Decl. ¶ 16.

[19] *Id.*

[20] *Id.* ¶ 17.

[21] Brick Aff. ¶ 19 ("The Kian Reps and I continued [Opco's] adherence to the Retrofit Customs Policies that [Opco] had adopted throughout 2018 and 2019."); Jimenez Decl. ¶ 10 ("Mr. Brick said that Chinese suppliers undervalued goods for [Opco] on Customs invoices to reduce the amount of duties owed.  He said that this practice had been going on for years.").

[22] Cravey Decl. ¶ 18.

[23] *Id.* ¶ 20.

[24] Dkt. 22, Pl.'s Opening Br. in Supp. of His Mot. for Summ. J. ("Brief No. 1") at 3.

7.      At a Holdco Board meeting on December 18, 2019, Cravey accused Brick of misleading the Holdco Board by failing to disclose Opco's Customs policies for Chinese imports.[25]  In January 2020, the Holdco Board determined to terminate Brick's employment with Opco and offered him a separation agreement that included a release of claims (the "Separation Agreement").[26]  In relevant part, the Separation Agreement provided:

> During [Brick's] employment with [Opco], [Opco] provided [Brick] with certain payments in 2019 totaling more than $400,000.00 (the "Earnings Payments") based on incorrect earnings data. . . .  In exchange for [Brick's] execution of this Release . . . [Opco] agrees not to pursue repayment of the Earnings Payments.[27]

8.      Brick did not sign the Separation Agreement because he believed the release was "lopsided and unacceptable."[28]  Instead, Brick resigned all of his positions with Holdco and Opco on January 28, 2020.[29]  The Companies accepted his resignation on January 31, 2020.[30]

9.      Brick engaged legal counsel to investigate and represent his interests in connection with the Earnings Payments claim and the CBP Proceedings.  On

---

[25] *Id.* ¶ 19; *accord* Brick Aff. ¶ 22–23.

[26] Cravey Decl. ¶ 22.

[27] Brick Aff. Ex. 3, at 1.

[28] Brick Aff. ¶ 31.

[29] Brick Aff. Ex. 4.

[30] Brick Aff. Ex. 5.

5

March 27, 2020, Brick submitted a letter to the Companies demanding advancement for his legal fees and expenses.[31]  In support of his demand for advancement, Brick submitted to the Companies redacted invoices from several different law firms.[32]  On April 2, 2020, the Companies responded through counsel that they did not believe Brick was entitled to advancement or indemnification and that the Companies were reserving all rights and defenses with respect to any such claims.[33]  Two days later, Brick filed this action for advancement.

10.     On April 16, 2020, the Holdco Board held a meeting to formally "consider and act upon the demand for advancement of expenses . . . filed by Nathan Brick."[34]  The Holdco Board passed a resolution stating in relevant part:

> WHEREAS, Nathan Brick has filed a civil action in the Court of Chancery in the State of Delaware pursuant to which he has made a demand for advancement of expenses . . . in connection with his conduct as the former Chief Operating Officer of Opco; . . .
>
> NOW, THEREFORE, BE IT RESOLVED, that the Board hereby exercises its contractual right under the Holdco LLC Agreement to deny advancement and indemnification to Mr. Brick . . . .[35]

---

[31] Brick Aff. Ex. 7; Cravey Decl. Ex. D.

[32] Cravey Decl. Ex. D.

[33] Brick Aff. Ex. 8; Cravey Decl. Ex. E.

[34] Cravey Decl. Ex. F, at 1.

[35] *Id.* at 2.

6

11. On April 17, 2020, Brick submitted a second demand for advancement.[36] The Companies responded on April 21, 2020, again indicating their position that Brick was not entitled to advancement.[37] The Companies further stated that even if Brick were entitled to advancement, the Companies would provide such advancement "only upon the tender of an undertaking 'satisfactory' to [Opco] and its respective affiliates."[38]

12. On May 16, 2020, Brick made a third demand for advancement, again attaching redacted invoices.[39] The three demands for advancement indicate that Brick has incurred $129,925.30 in legal fees and expenses over the course of approximately four months.[40]

13. The parties cross-moved for summary judgment as to Brick's entitlement to advancement. Briefing concluded on July 17, 2020,[41] and the Court held oral argument on July 24, 2020.[42]

---

[36] Cravey Decl. Ex. G.

[37] Cravey Decl. Ex. H.

[38] *Id.* at 1.

[39] Cravey Decl. Ex. I.

[40] *See* Dkt. 30, Defs.' Answering Br. in Opp'n to Pl.'s Mot. for Summ. J. & Opening Br. in Supp. of Defs.' Cross-Mot. for Summ. J. ("Brief No. 2"), at 22.

[41] Brief No. 1; Brief No. 2; Dkt. 34, Pl.'s Reply to Defs.' Answering Br. in Opp'n to Pl.'s Mot. for Summ. J. & Pl.'s Answering Br. to Defs.' Br. in Supp. of Defs.' Cross-Mot. for Summ. J.; Dkt. 39, Defs.' Reply Br. in Supp. of Defs.' Cross-Mot. for Summ. J.

[42] Dkt. 47, Oral Arg. of Cross-Mots. for Summ. J.

# LEGAL ANALYSIS

14.    Summary judgment "should, when possible, be encouraged for it should result in a prompt, expeditious and economical ending of lawsuits."[43]  Court of Chancery Rule 56 provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[44]  Summary judgment is not warranted "if the parties are in disagreement concerning the factual predicate for the legal principles they advance."[45]  Summary judgment is an appropriate way to resolve advancement disputes when the relevant question turns on the terms of the instruments granting advancement rights and the pleadings in the proceedings for which advancement is sought.[46]

15.    On cross-motions for summary judgment, a moving party "concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party."[47]  At the

---

[43] *Davis v. Univ. of Del.*, 240 A.2d 583, 584 (Del. 1968).

[44] Ct. Ch. R. 56(c).

[45] *Id.*

[46] *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldg. Co. LLC*, 853 A.2d 124, 126–27 (Del. Ch. 2004).

[47] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

same time, Rule 56(e) provides that the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."[48] To invoke this rule, "the opposing party must submit an affidavit requesting discovery and stating its scope."[49] Although this Court has "broad discretion" in permitting additional discovery under Rule 56(f), the onus is on the non-moving party to state "with some degree of specificity, the additional facts sought by the requested discovery."[50]

16. Brick demands advancement under the Holdco LLC Agreement,[51] which is governed by Delaware law.[52] "The mere existence of the limited liability company's powers to indemnify and advance expenses creates no rights in any

---

[48] Ct. Ch. R. 56(e).

[49] *Corkscrew Min. Ventures, Ltd. v. Preferred Real Estate Invs., Inc.*, 2011 WL 704470, at *3 (Del. Ch. Feb. 28, 2011) (citing *von Opel v. Youbet.com, Inc.*, 2000 WL 130625, at *1 (Del. Ch. Jan. 26, 2000)).

[50] *Ryan v. Lyondell Chem. Co.*, 2008 WL 2923427, at *22 (Del. Ch. July 29, 2008), *rev'd on other grounds*, 970 A.2d 235 (Del. 2009); *see also Wimbledon Fund LP v. SV Special Situations LP*, 2011 WL 378827, at *4 (Del. Ch. Feb. 4, 2011) (explaining that "[t]he purpose of a Rule 56(f) affidavit is to avoid situations where an opposing party receives an adverse judgment on a summary judgment record due to a lack of adequate time for discovery but also to require a party who needs discovery to respond to a summary judgment motion to timely explain what discovery it needs to do so").

[51] Although the gravamen of Brick's complaint concerns his entitlement for advancement under the Holdco LLC Agreement, Brick passingly alleges that he is entitled to advancement under the Opco LLC Agreement. *See* Compl. ¶ 17. The relevant provisions of the Opco LLC Agreement are substantially the same as the advancement provisions of the Holdco LLC Agreement. For simplicity, this decision runs the analysis under the Holdco LLC Agreement only.

[52] Holdco LLC Agreement § 12.11.

member, manager, or other person to compel the exercise of those powers."[53] Rather, the stated policy of the Delaware LLC Act is "to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements."[54] "When interpreting advancement and indemnification provisions in a limited liability company agreement, a Delaware court will follow ordinary contract interpretation principles."[55] Therefore, when "the provisions of the operating agreement are clear and unambiguous, the court must honor the intent of the parties in interpreting their contract."[56] "When the court has looked beyond the LLC agreement for guidance in construing its terms . . . the court has been careful not to embrace analogies to other entities or legal structures too broadly or without close analysis, because the flexibility inherent in the limited liability company form complicates the task of fixing such labels or making such comparisons."[57] As then-Vice Chancellor Montgomery-Reeves has summarized, the LLC Act is "less paternalistic" than the corporate code in that it "defers completely to the contracting

---

[53] Robert L. Symonds, Jr. & Matthew J. O'Toole, *Symonds & O'Toole on Delaware Limited Liability Companies* § 11.02[C], at 11-12 (2d ed. & Supp. 2019).

[54] 6 *Del. C.* § 18-1101(b).

[55] *Grace v. Ashbridge LLC*, 2013 WL 6869936, at *4 (Del. Ch. Dec. 31, 2013).

[56] *Morgan v. Grace*, 2003 WL 22461916, at *2 (Del. Ch. Oct. 29, 2003).

[57] *A&J Capital, Inc. v. Law Offices of Krug*, 2018 WL 3471562, *4 (Del. Ch. July 18, 2018) (internal quotation marks and citation omitted).

parties to create and to limit rights and obligations with respect to indemnification and advancement."[58]

## A.   Entitlement to Advancement

17.   Brick's claim to advancement arises from Section 11.3 of the Holdco LLC Agreement.   Section 11.3(a) provides a grant of indemnification and advancement rights to Covered Persons.  With bracketed numbers to aid the analysis, Section 11.3(a) provides:

> To the fullest extent permitted by the [Delaware LLC] Act, . . . [Opco] shall indemnify, hold harmless, defend, pay and reimburse any [1] Covered Person against any and all losses, claims, damages, judgments, fines or liabilities, including reasonable legal fees or other expenses incurred [2] in investigating or defending against such losses, claims, damages, judgments, fines or liabilities, and any amounts expended in settlement of any claims (collectively, "Indemnified Losses") to which such Covered Person may become subject by reason of:
>
> (i)   Any act or omission or alleged act or omission performed or omitted to be performed on behalf of [Opco], any Member or any direct or indirect Subsidiary of the foregoing in connection with the business of [Opco];
>
> (ii)   The fact that such Covered Person is or was acting in connection with the business of [Opco] as a partner, member, stockholder, controlling Affiliate, manager, director, officer, employee or agent of [Opco], any Member, or any of their respective controlling Affiliates, or that such Covered Person is or was serving

---

[58] *Harrison v. Quivus Sys., LLC*, C.A. No. 12084-VCMR, at 11 (Del. Ch. Aug. 5, 2016) (TRANSCRIPT).

11

at the request of [Opco] as a partner, member, manager, director, officer, employee or agent of any Person including [Opco] or any [Opco] Subsidiary;

[3] provided, that such Covered Person's conduct did not constitute Excluded Misconduct. [4] Notwithstanding the foregoing, no indemnification shall be payable hereunder to any Covered Person in respect of any claim, lawsuit or other proceeding in which such Covered Person is a plaintiff, other than an action seeking indemnification under this Section 11.3.[59]

18. Section 11.3(b) of the Holdco LLC Agreement provides advancement rights to Covered Persons as follows:

[Opco] shall promptly reimburse (and/or advance to the extent reasonably required) each [1] Covered Person for reasonably legal or other expenses (as incurred) in connection with [2] investigating, preparing to defend or defending any claim, lawsuit or other proceeding relating to any Indemnified Losses [3] for which such Covered Person is entitled to be indemnified pursuant to this Section 11.3, [4] subject to receipt by [Opco] of an undertaking satisfactory to the Board by or on behalf of such Covered Person to repay such amounts if it shall ultimately be determined that such Covered Person is not entitled to be indemnified by [Opco].[60]

19. Section 11.3(g) of the Holdco Agreement provides that the Holdco Board retains the "sole discretion" to "limit or deny" indemnification to Covered Persons who are not members of the Holdco Board:

In the case of any Covered Person other than a Representative, it being understood that indemnification

---

[59] Holdco LLC Agreement § 11.3(a).

[60] Id. § 11.3(b).

of a Representative with respect to claims in its capacity as such shall be mandatory to the extent permitted under this Agreement, *the Board shall have the right, acting in its sole discretion, to limit or deny the indemnification provided for hereunder with respect to any other Covered Person, in whole or in part.*[61]

20. The Holdco LLC Agreement defines "Covered Persons" to include Holdco and Opco officers,[62] and "Representative" as person elected to the Holdco Board.[63] Applying these definitions to the above passage, Section 11.3(g) grants the Holdco Board the sole unfettered discretion to limit indemnification rights to all Covered Persons except Holdco Board members. Put differently, indemnification for officers is discretionary and indemnification for Holdco Board members is mandatory.

### 1. Covered Person

21. The first issue raised by the parties is whether Brick is entitled to advancement as an Opco officer. Brick says he is. Defendants say he is not.

22. The premise of Defendants' argument is that the provision of the Holdco LLC Agreement that permitted the Holdco Board to deny indemnification to

---

[61] *Id.* § 11.3(g) (emphasis added).

[62] "Covered Persons" include "(i) each Member, (ii) each officer, director, shareholder, partner, member, controlling Affiliate, employee, agent or other representative of each Member, and each of their controlling Affiliates, and (iii) each Representative, officer, employee, agent or other representative of [Opco]." *Id.* § 1.7.

[63] "Representative" means "a representative duly elected to the Board," where Board is defined as the Holdco Board. *Id.*

13

officers allowed the Board to deny advancement to officers as well. Defendants contend that the Holdco Board exercised its discretion to deny advancement to Brick as an officer.

23. Brick does not dispute Defendants' premise—that a discretionary decision to deny him indemnification rights as an officer operates to terminate his advancement rights as an officer. Instead, Brick argues that Hodlco lacked the authority to "revoke" his right to advancement, which he describes as "vested" as of the date of his March 27, 2020 demand.[64]

24. Brick relies on this Court's decision in *Branin v. Stein Roe Investment Counsel, LLC* for support, but that case is distinguishable.[65] In *Branin*, the defendant LLC amended a mandatory indemnification provision after it learned that the plaintiff had been sued and would be entitled to indemnification for expenses incurred in litigating that suit.[66] After determining that the purpose of the amendment was to "add[] an exclusion that sought to preclude [the plaintiff's] indemnification claim,"[67] this Court held that the original indemnification provision governed the plaintiff's indemnification rights because any amendment to the LLC

---

[64] Brief No. 1 at 53–55 (arguing that Defendants "are bound and confined by the limited grounds they enumerated in their April 2, 2020 rejection").

[65] 2014 WL 2961084 (Del. Ch. June 30, 2014).

[66] *Id.* at *3.

[67] *Id.*

14

agreement "did not . . . modify or eliminate . . . any liability that already existed under the [a]greement."[68]

26. In this case, the Holdco Board did not act to amend or modify the mandatory indemnification rights of Brick under the Holdco LLC Agreement. The right at issue was not "vested" and "revoked." Rather, the Holdco Board exercised discretionary right expressly afforded to it under the plain language of the operative Holdco LLC Agreement.

26. By its April 16, 2020 resolution, the Holdco Board exercised its power to deny Brick advancement in his capacity as Chief Operating Officer of Opco. This fact is undisputed. And the Holdco Board's right to make such a determination is unambiguous. Thus, Brick is not entitled to advancement in his capacity as an officer.

### 2. Covered Capacity

27. The next issue is whether the proceedings for which Brick seeks advancement involve actions he took in a covered capacity—as a Holdco Board member. Brick says they do. Defendants say that they do not.

28. Defendants argue that all of the claims for which Brick seeks advancement involve actions that he took *solely* in his capacity as Chief Operations Officer and not as a Holdco Board member. The parties agree that the Holdco LLC

---

[68] *Id.* at *8.

Agreement imports the "by reason of the fact" standard "that tracks the language of Section 145 of the [Delaware General Corporation Law]."[69]  In the corporate context, this standard is satisfied when "there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity."[70]

29.     Defendants submitted detailed evidence that Brick's actions giving rise to his demand for advancement implicate solely his capacity as Chief Operations Officer.  Defendants put forth three affidavits that describe Brick's responsibilities as COO of Opco.[71]  A careful review of those affidavits reflect that Brick was acting as COO in connection with the relevant conduct.  Rather than rebut Defendants' characterization of his role, Brick appears to concede in briefing that the Earnings Payments claim "is a claim made by reason of the fact that he was COO"[72] and that any liability arising out of the CBP Proceeding arises "'by reason of the fact' he was COO of [Opco]."[73]  Brick further concedes in his own affidavit that the conduct at issue occurred in his capacity as an *employee*, not as a member of the Holdco

---

[69] *Hyatt v. Al Jazeera Am. Hldgs. II, LLC*, 2016 WL 1301743, at *7 (Del. Ch. Mar. 31, 2016).

[70] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005).

[71] Cravey Decl. ¶¶ 9, 14, 17; Kossoff Decl. ¶¶ 14, 15, 17; Jimenez Decl. ¶ 3.

[72] Brief No. 1 at 38.

[73] *Id.* at 14.

Board.[74] This characterization of his responsibilities is corroborated by his general narrative that he "merely executed" the policies set up by others to whom he reported, *i.e.*, Kossoff and the Holdco Board.[75]

30. Brick does not meaningfully argue based on the factual record that his actions bear the relevant nexus to his position as a Holdco Board member. The record evidence regarding the double-invoicing scheme shows communications between Brick and the suppliers made in Brick's role as an officer and carried out as part of Brick's day-to-day management of Opco's supply chain.[76] There is no evidence that Brick included other Holdco Board members on emails with suppliers or sought their authority to act.[77] Brick's affidavit does not dispute these issues.

31. "After the moving party has supported its motion for summary judgment, the burden shifts to the non-moving party to provide admissible evidence, in addition to the pleadings, establishing the existence of a genuine issue of material

---

[74] Brick Aff. ¶ 34.

[75] *Id.* ¶ 7.

[76] *See* Cravey Decl. Ex. C (emails evidencing that day-to-day management of the supply chain and related duties were delegated to Brick).

[77] *See generally* Cravey Decl. Ex. J (emails between Brick and Chinese suppliers evidencing Brick's execution of invoicing scheme).

fact."[78]  The non-moving party must "dispute the facts by affidavit or proof of similar weight."[79]

32.     Brick has failed to dispute material facts by affidavit or proof of similar weight.  Thus, there is no issue of disputed material fact that the proceedings for which Brick claims advancement are solely by reason of the fact that he was COO of Opco, which is not a covered capacity.

**CONCLUSION**

33.     In sum, Brick's claims for advancement are solely by reason of the fact that he was an officer of Opco.  The Holdco Board invoked its right to use its sole discretion to deny Brick advancement in that capacity.  Defendants' cross-motion for summary judgment is therefore GRANTED.  Brick's cross-motion for summary judgment is DENIED.

*/s/ Kathaleen St. J. McCormick*
Vice Chancellor Kathaleen St. J. McCormick
Dated:  August 18, 2020

---

[78] Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 4.08[c], at 4-35 (2019) (citing *In re Gaylord Container Corp. S'holders Litig.*, 753 A.2d 462, 473 (Del. Ch. 2000)).

[79] *Tanzer v. Int'l Gen. Indus., Inc.*, 402 A.2d 382, 385 (Del. Ch. 1979).