**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**SELENA E. MOLINA**
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: October 31, 2022
Date Submitted: July 12, 2022

Barbara Snapp Danberg, Esquire
Catherine M. Cramer, Esquire
J. Garrett Miller, Esquire
Baird Mandalas Brockstedt Federico &
Cardea, LLC
2711 Centerville Road, Suite 401
Wilmington, DE 19808

David J. Ferry, Jr., Esquire
Thomas R. Riggs, Esquire
Brian J. Ferry, Esquire
Ferry Joseph, P.A.
1521 Concord Pike, Suite 202
Wilmington, DE 19803

Re:   *In the Matter of the Estate of Lawrence M. Sullivan, Sr., Deceased*,
      C.A. No. 2020-0318-SEM

Dear Counsel:

This case began with a petition for an elective share. After failed attempts at resolution, including mediation, the matter comes to me on summary judgment. The respondents argue that the petitioner's request is barred by an antenuptial agreement or the petitioner's other inheritance from the estate; the petitioner contends there are disputes of fact material to both. I find the antenuptial agreement binds the petitioner and she has failed to timely challenge it; therefore, I find summary judgment should be granted in the respondents' favor and the petition dismissed.

This is my final report.

## I.    BACKGROUND

This action stems from the estate of Lawrence M. Sullivan, Sr. (the "Decedent").  The Decedent married Catherine D. Sullivan (the "Petitioner") on September 3, 1988.[1]  Before their marriage, on August 19, 1988, the Decedent and the Petitioner entered into an ante-nuptial agreement (the "Ante-Nuptial Agreement").[2]  The Ante-Nuptial Agreement provides, in pertinent part, that the Petitioner:

> does hereby waive, release and relinquish all her right, title, estate and interest, statutory or otherwise, including, but not limited to, dower (inchoate or consummate) homestead, exempt property, family allowance, community property, statutory allowance, distribution in intestacy and right of election to take against the Will of [the Decedent] which may be now or hereafter provided for under the law of Delaware, or any other state, county or jurisdiction[.][3]

The Petitioner was represented by counsel at Morris, James, Hitchens & Williams in connection with the Ante-Nuptial Agreement.[4]  On August 19, 1988, the Petitioner's attorney Barbara Crowell wrote to her explaining she had reviewed

---

[1] D.I. 1 ¶ 1. Undisputed facts from the petition are accepted as true for the purposes of this decision.

[2] D.I. 31, Ex. D.

[3] *Id.*

[4] *See* D.I. 35, Ex. B.

the Ante-Nuptial Agreement and did not recommend the Petitioner sign it.[5] She explained, "[i]f you sign the agreement . . . you will be doing so against my advice and without my approval."[6] The Petitioner confirmed her receipt and understanding of the letter, signing where indicated to confirm that if the Petitioner signed the Ante-Nuptial Agreement it would be against counsel's advice.[7] The Petitioner further explained in a handwritten note: "I acknowledge that I understand you don't approve and will not represent me in any matter pertaining to the signed agreement."[8]

Despite these contemporaneous notes, the Petitioner submitted an affidavit in this action wherein she represents she "did not understand the effect the Ante-Nuptial Agreement had on [her] rights, and [she] did not receive adequate legal counsel."[9] Rather, the Petitioner now attests that she "was pressured to sign the Ante-Nuptial Agreement by [the Decedent], who told [her] that the Agreement would protect [her], and who [she] trusted because he was [her] fiancée and more importantly because he was a Delaware attorney and [she] therefore relied on his

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] D.I. 35, Ex. J.

knowledge of the law and his advice regarding the Ante-Nuptial Agreement."[10]

Nonetheless, the Decedent and the Petitioner remained married, with the Ante-Nuptial Agreement unchallenged, until the Decedent's death on September 9, 2019.[11]

The Decedent's estate (the "Estate") is governed by his last will and testament, which was admitted to probate on December 2, 2019 (the "Will").[12] The Will named the Lawrence M. Sullivan, Sr. Revocable Trust U/A/D February 6, 2002 (the "Trust") as the beneficiary of the residuary of the Estate.[13] The Will named the Decedent's children—Lawrence M. Sullivan, Jr., John L. Sullivan, and Catherine

---

[10] *Id.*

[11] D.I. 1 ¶ 1.

[12] *Id.* ¶ 4. *See In re Sullivan*, 173204 AF ("ROW"), D.I. 1; *Arot v. Lardani*, 2018 WL 5430297, at *1 n.6 (Del. Ch. Oct. 29, 2018) (citing 12 *Del. C.* § 2501; D.R.E. 202(d)(1)(C)) ("Because the Register of Wills is a Clerk of the Court of Chancery, filings with the Register of Wills are subject to judicial notice.").

[13] ROW D.I. 1. The Trust was restated on September 20, 2018, amended on March 25, 2019, and amended a final time on April 11, 2019. D.I. 31, Ex. A-C. The Decedent's sons, Lawrence and John serve as trustees of the Trust. D.I. 31, Ex. A-C. The Trust provides that the Petitioner is entitled to 25% of the distributable income from the Trust during her lifetime, and 75% will go to the Decedent's children per stirpes. D.I. 31, Ex. B. Upon the Petitioner's death, 25% of the Trust's remaining principal will go to the Petitioner's surviving issue per stirpes with the remaining 75% going to the Decedent's surviving issue per stirpes. D.I. 31, Ex. A. First names are used for clarity; no disrespect or familiarity is intended.

S. Horner (collectively, the "Respondents")—as executors.[14]  Ms. Horner declined the appointment and Lawrence and John were appointed as co-executors of the Estate.[15]

The Petitioner filed a petition for an elective share of the Decedent's estate on April 29, 2020 (the "Petition").[16]  The Petitioner did not mention the Ante-Nuptial Agreement in the Petition.  The first mention came in the Respondents' responses filed on July 1, 2020.[17]  Therein, the Respondents listed several affirmative defenses including for failure to state a claim and that the Petitioner "is precluded from asserting her claim and from seeking the relief demanded in this action because she executed" the Ante-Nuptial Agreement "in which she waived her right to claim an elective share of the Decedent's Estate."[18]  The Respondents also asserted affirmative defenses of waiver, estoppel, laches, and acquiescence.[19]

---

[14] ROW D.I. 1.

[15] ROW D.I. 11, 13.

[16] D.I. 1. On June 9, 2020, I granted an order allowing the Respondents additional time to respond to the petition. D.I. 6.

[17] The executors of the Estate filed a response, to which Ms. Horner joined by separate submission. D.I. 7, D.I. 8.

[18] D.I. 7. *See also* D.I. 8.

[19] D.I. 7. *See also* D.I. 8.

On December 4, 2020, the parties filed a stipulation regarding the Decedent's Federal Estate Tax Return Form 706, which I granted on December 11, 2020.[20] After the form was provided to the Petitioner, the docket remained dormant for several months, until I requested a status letter from the parties on September 9, 2021.[21] The Petitioner responded on September 14, 2021, by requesting a hearing date and an order for mediation in advance of the hearing.[22] The Respondents replied the same day with an explanation that efforts at settlement failed and by filing a motion for summary judgment (the "Motion").[23] Soon after, on October 1, 2021, the Respondents filed a status report informing me that the parties agreed to mediate and wished to postpone the Motion until after mediation concluded.[24]

The docket went dormant again, until I again requested a status letter from the parties on December 1, 2021.[25] Both parties responded the same day, informing me that they had scheduled mediation for January 11, 2022, and that they would file a

---

[20] D.I. 13.

[21] D.I. 14-15.

[22] D.I. 16.

[23] D.I. 17-18.

[24] D.I. 20.

[25] D.I. 21.

follow-up status letter following mediation.[26]  That letter arrived on March 24, 2022, informing me that mediation was not successful, and the litigation would be moving forward.[27]

On May 26, 2022, I granted a scheduling order for briefing the Motion.[28]  The Respondents filed their opening brief in support of the Motion on May 31, 2022.[29] The Petitioner filed her answering brief in opposition to the Motion on June 30, 2022.[30]  By July 12, 2022, the Motion was fully briefed, and the matter was submitted for my consideration.[31]

## II.    ANALYSIS

Under Court of Chancery Rule 56, summary judgment will be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[32]  "[T]he facts must be viewed in the light most

---

[26] D.I. 22, 23.

[27] D.I. 25.

[28] D.I. 30.

[29] D.I. 31.

[30] D.I. 35.

[31] D.I. 37.

[32] Ct. Ch. R. 56(c).

favorable to the nonmoving party and the moving party has the burden of demonstrating that there is no material question of fact."[33]

The record for a motion for summary judgment consists of "the pleadings, depositions, answers to interrogatories and admissions on file, together with [supporting or opposing] affidavits, if any[.]"[34]  Under Court of Chancery Rule 56(e)

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

"When a motion for summary judgment is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading," and, rather, must provide through affidavits "specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."[35]

---

[33] *Senior Tour Players 207 Mgmt. Co. v. Golftown 207 Hldgs. Co.*, 853 A.2d 124, 126 (Del. Ch. 2004).

[34] Ct. Ch. R. 56(c).

[35] *Id.*

Under this lens, the Respondents argue that the Ante-Nuptial Agreement bars the Petitioner's claim for an elective share, or the Petitioner is not entitled to an elective share because the value of the Petitioner's inheritance is greater than her elective share, vitiating her claim.[36] Regarding the first, the Respondents further argue the Petitioner is barred by laches from challenging the Ante-Nuptial Agreement. Because I agree and find the Ante-Nuptial Agreement is binding, I do not reach the Respondents' second argument. When the Ante-Nuptial Agreement was executed, 13 *Del. C.* § 301 provided:

> A man and a woman in contemplation of matrimony, by a marriage contract executed in the presence of 2 witnesses at least 10 days before the solemnization of the marriage, may determine what rights each shall have in the other's estate during marriage and after its dissolution by death and may bar each other of all rights in their respective estates not so secured to them and any such contract duly acknowledged before any officer authorized to take acknowledgments may be recorded in the deed records in the office of the recorder in any and all counties of the State.[37]

---

[36] An elective share is equal to one-third of the deceased spouse's elective estate, minus any other transfers made to the surviving spouse by the estate. 12 *Del. C.* § 901(a).

[37] *Coulbourn v. Lambert*, 1996 WL 860586, at *5 (Del. Fam. Ct. Dec. 19, 1996).

Further, "[b]ecause of the unique relationship between parties who are about to be married, courts generally review an antenuptial agreement for both procedural and substantive fairness."[38]  An antenuptial agreement is not fair if:

> it fails to satisfy any one of the following requirements: (1) each spouse has made a fair and reasonable disclosure to the other of his or her financial status; (2) each spouse has entered into the agreement voluntarily and freely; and (3) the substantive provisions of the agreement dividing the property upon divorce are fair to each spouse at the time of the execution of the agreement and, if circumstances significantly changed since the agreement, then also at the time of the divorce.[39]

Here, there is no dispute that the Ante-Nuptial Agreement met the requirements in Section 301.  But the Petitioner argues that there are disputes of fact material to whether the Ante-Nuptial Agreement meets the procedural or substantive fairness tests.  To do so, she introduced a letter reflecting counsel's advice that the Petitioner not sign the Ante-Nuptial Agreement (and her acknowledgment thereof) and an affidavit attesting that she was pressured and deceived when signing the Ante-Nuptial Agreement.  The Petitioner uses these documents to argue the Decedent was the dominant party in connection with the Ante-Nuptial Agreement and, as such, the

---

[38] *Id.* at *7.

[39] *Id.*

Respondents, as proponents of the Ante-Nuptial Agreement, bear the burden of proving its fairness.[40] Down these tracks, the Petitioner sees various disputes of fact.

But I find I need not tread either track because the Petitioner's challenge to the Ante-Nuptial Agreement is barred by laches. Laches is an equitable doctrine "rooted in the maxim that equity aids the vigilant, not those who slumber on their rights."[41] Although the statute of limitations for an action does not strictly dictate the time to bring equitable claims, the Court will apply the statute of limitations by analogy "absent tolling or extraordinary circumstances."[42] "There is a presumption of prejudice and unreasonableness when the analogous statute of limitations is exceeded."[43]

Thus, "[i]n order to grant summary judgment based on laches, I must determine which analogous statute of limitations applies."[44] The Uniform Premarital Agreement Act (the "UPAA"), which tolls the statute of limitations for challenging

---

[40] *See J.A.B. v. N.H.B.*, 2003 WL 23312951, at *4 (Del. Fam. Ct. Nov. 18, 2003).

[41] *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016).

[42] *Id.* at 983.

[43] *Olga J. Nowak Irrevocable Tr. v. Voya Fin., Inc.*, 2022 WL 2359628, at *9 (Del. Ch. June 30, 2022) (citations omitted).

[44] *BioVeris Corp. v. Meso Scale Diagnostics, LLC*, 2017 WL 5035530 at *5 (Del. Ch. Nov. 2, 2017).

a premarital agreement for the length of the marriage, does not apply.[45]  But the

Petitioner argues that 12 *Del. C.* § 901 leads to the same conclusion—because the

right of election does not arise until a spouse's death, the Petitioner argues her claim

did not begin to accrue until the Decedent's death.  I disagree.

At any time during their marriage, the Petitioner could have challenged the

Ante-Nuptial Agreement.  She could have brought an action to reform or challenge

its various provisions, moving for declaratory relief.  Such actions, as recognized in

*Olga J. Nowak Irrevocable Tr. v. Voya Fin., Inc.*, 2022 WL 2359628, at \*6 (Del. Ch.

June 30, 2022), invoke the three-year statute of limitations for contract actions.[46]  In

*Olga J. Nowak Irrevocable Trust*, this Court found contract reformation claims

barred by laches where the movant waited more than three years after knowledge of

the facts giving rise to a reformation claim.[47]  Therein, the Court recognized

"significant, material elements of the reformation claims involve[d] oral

---

[45] 13 *Del. C.* § 328.  The need for this provision was explained in comments to the UPAA, Section 8: "In order to avoid the potentially disruptive effect of compelling litigation between the spouses in order to escape the running of an applicable statute of limitations, Section 8 tolls any applicable statute during the marriage of the parties …. However, a party is not completely free to sit on his or her rights because the section does preserve certain equitable defenses." Unif. Premarital Agreement Act, § 8, cmt.

[46] *See* 10 *Del. C.* § 8106.

[47] *Nowak Irrevocable Tr.*, 2022 WL 2359628, at \*9.

communications occurring as far back as 1999 and no more recently than 2011."[48]

Thus, the Court found, "[i]t is unfair to any party to litigate the accuracy of such long

ago conversations."[49]

The same is true here. The Petitioner was advised by her attorney in 1988 not

to sign the Ante-Nuptial Agreement. She acknowledged that advice and the warning

contained therein, yet never acted on it. Rather she and the Decedent "were happily

married for over thirty-one years," during which time the Ante-Nuptial Agreement

remained in place.[50] Only now does the Petitioner attest, through an affidavit dated

June 27, 2022, that she did not understand the Ante-Nuptial Agreement or receive

adequate legal counsel.[51] Her affidavit, however, is conclusory, self-serving, and

contradicts her and her attorney's contemporaneous notes.

And the Petitioner's delay is not harmless, as she contends. Evidence

surrounding execution of the Ante-Nuptial Agreement is stale and it is likely that the

Decedent relied on the Ante-Nuptial Agreement's enforceability in his estate

planning. Further, although the UPAA now tolls the statute of limitations for

---

[48] *Id.*

[49] *Id.*

[50] D.I. 35, p.6.

[51] D.I. 35, Ex. J.

challenging a premarital agreement for the length of the marriage, it does not apply retroactively, and the Petitioner has not demonstrated any extraordinary circumstance that justifies tolling.

The same was recognized by the Court of Appeals of North Carolina in *Crosland v. Patrick*.[52] There, the appellate court was faced with a similar dilemma— a spouse waited over thirty years to challenge an ante-nuptial agreement and North Carolina's version of the UPAA did not apply. The court upheld the trial court's ruling that the challenge was time-barred, finding the underlying claim accrued at the time the agreement was executed and the statute of limitations to bring such action expired during the marriage. The post-death, decades later request was too late.

I hold similarly and find the Petitioner is barred from challenging the Ante-Nuptial Agreement by laches.[53] Because her challenge is barred, the Petitioner cannot avoid summary judgment by injecting purported disputes of fact regarding the negotiation or execution of the Ante-Nuptial Agreement. The material facts— that the Ante-Nuptial Agreement was executed and, by its unambiguous terms, bars

---

[52] *Crosland v. Patrick*, 2021 WL 980095, at *3 (N.C. Ct. App. 2021).

[53] *See also id.*

the right to claim an elective share—are undisputed. Thus, the Motion should be granted.

## III.    CONCLUSION

For the above reasons, I find that the Motion should be granted. The Petitioner sat on her right to challenge the Ante-Nuptial Agreement for too long and is now barred by the doctrine of laches. With the Ante-Nuptial Agreement uncontestable, the Petitioner waived her claim to an elective share of the Estate and the Respondents are, thus, entitled to judgment as a matter of law.

This is my final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery