# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LING CHAI MAGINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-0805-LWW |
| | ) | |
| ROBERT MAGINN, JR., and D. QUINN MILLS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JENZABAR, INC., a Delaware corporation, | ) | |
| | ) | |
| Nominal Party. | ) | |

## MEMORANDUM OPINION

Date Submitted:  October 13, 2023
Date Decided:  October 16, 2023

Neil R. Lapinski, Phillip A. Giordano, & Madeline R. Silverman, GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware; *Counsel for Plaintiff Ling Chai Maginn*

Garrett B. Moritz, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; *Counsel for Defendant Robert Maginn, Jr.*

Thad J. Bracegirdle, BAYARD, P.A., Wilmington, Delaware; *Counsel for Defendant D. Quinn Mills*

Albert H. Manwaring, IV & Kirsten A. Zeberkiewicz, MORRIS JAMES LLP, Wilmington, Delaware; *Counsel for Nominal Defendant Jenzabar, Inc.*

**WILL, Vice Chancellor**

Ling Chai Maginn and Robert Maginn, Jr. are engaged in divorce proceedings in Massachusetts to divide their joint assets. They are both founders, stockholders, and directors of Jenzabar, Inc. Their divorce prompted the board of Jenzabar to form a special committee to prevent negative effects on the company.

In July 2023, one of the two members of the special committee died. On August 3, the plaintiff filed an emergency ex parte motion in Massachusetts and obtained an order temporarily "equalizing" the parties' Jenzabar shares. Later that day, Chai Maginn delivered a written consent purporting to remove D. Quinn Mills—the remaining special committee member—from Jenzabar's board. When Maginn and Mills refused to recognize the consent, Chai Maginn filed this action under 8 *Del. C.* § 225.

This case turns on whether the August 3 written consent is valid. As discussed below, it is not. Chai Maginn lacked the unilateral authority to sign on behalf of a limited partnership in which she and Maginn are the two general partners. Maginn's partnership interests have not been transferred and Maginn (at present) remains a general partner of the entity. Without the limited partnership, Chai Maginn lacked sufficient shares to remove Mills from the board.

The defendants' motion for summary judgment is granted. The plaintiff's cross-motion for summary judgment is denied.

1

## I. FACTUAL BACKGROUND

Unless otherwise noted, the factual background is drawn from the undisputed facts in the parties' pleadings and documentary exhibits submitted by the parties.

### A. Jenzabar and Its Stockholders

Plaintiff Ling Chai Maginn is a founder and Chief Executive Officer of nominal defendant Jenzabar, Inc.[1] Jenzabar, a Delaware corporation, provides software and services for the education sector.[2]

Approximately 90% of Jenzabar's shares are controlled directly or indirectly by Chai Maginn and defendant Robert A. Maginn, Jr. as married spouses.[3] New Media Investors II-C, LLC ("New Media II-C")—an entity formed and managed exclusively by Maginn—holds 19.09% of Jenzabar's stock.[4] The Chai-Maginn Family LLC (the "Delaware LLC")—a Delaware limited liability company managed

---

[1] Aff. of Ling Chai Maginn in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Mot. for Summ. J. (Dkt. 35) ("Chai Maginn Aff.") ¶¶ 1, 3; Verified Compl. for Declaratory and Injunctive Relief (Dkt. 1) ("Compl.") ¶ 11.

[2] Compl. ¶¶ 6, 11.

[3] *Id.* ¶ 14. For clarity, this decision refers to Ling Chai Maginn as "Chai Maginn" and to Robert Maginn, Jr. as "Maginn."

[4] Aff. of Def. Robert Maginn, Jr. in Supp. of His (i) Resp. to Mot. to Expedite, (ii) Opp'n to Mot. for TRO, and (iii) Mot. for Summ. J. (Dkt. 8) ("Maginn Aff.") Ex. 1 (Jenzabar capitalization table). The ownership percentages reflected in the capitalization table may have changed slightly due to dilution, but any differences are immaterial to the resolution of the present motions. *See* Maginn Aff. ¶ 2.

by Chai Maginn and her sister, Dr. Li Chai—holds another 29.37%.[5] Maginn and Chai Maginn each personally hold about 0.06% of Jenzabar's stock.[6]

Jenzabar's largest stockholder is the Chai-Maginn Family LP (the "Family LP"), which holds a 42.08% stake.[7] The Family LP is a Nevada limited partnership.[8] The Limited Partnership Agreement of the Chai-Maginn Family Limited Partnership (the "Family LP Agreement") states that the Family LP's "General Partners" are Maginn and Chai Maginn.[9] Section 7.1 of the Family LP Agreement provides that "[t]he business and affairs of the Partnership shall be under the exclusive control of the General Partners who shall act by a majority vote in all business affairs."[10] For such purposes, the General Partners (i.e., Maginn and Chai Maginn) "each have one vote."[11]

## B. The Divorce Litigation

On January 23, 2019, Chai Maginn initiated divorce proceedings in the Probate and Family Court of the Commonwealth of Massachusetts.[12] On January 4,

---

[5] Maginn Aff. Ex. 1.

[6] *Id.*

[7] *Id.*

[8] Maginn Aff. Ex. 2 ("Family LP Agreement") at 1. As discussed below, another version of the Family LP Agreement has been introduced into the record. *See infra* Section I.G.

[9] *Id.* at 1.

[10] *Id.* § 7.1.

[11] *Id.*

[12] Chai Maginn Aff. ¶ 17; Compl. ¶ 15.

2023, Special Master Robert J. Rivers, Jr. issued an Amended Master's Report (the "Master's Report") detailing the proposed division of the parties' joint assets.[13]

Paragraph 8(a) of the Master's Report addresses the division of Jenzabar stock held collectively by Maginn and Chai Maginn, totaling 62.39% of Jenzabar's issued and outstanding shares.[14] It states that Maginn would retain the shares of Jenzabar stock he held individually and those held by New Media II-C.[15] It also contemplates that Chai Maginn would transfer 12.04% of the Jenzabar shares held by the Family LP to Maginn and "retain the balance of shares held by the [Family LP] after the transfer (29.67% of the total [Jenzabar] shares)."[16]

Paragraph 8(e) of the Master's Report addresses the parties' interests in the Family LP.[17] It observes that Maginn and Chai Maginn are "general partners" of the entity and own a combined 99.115%. The assets of the Family LP were "41.71% of the total stock in Jenzabar, Inc."[18] Paragraph 8(e) further states:

> The parties' Jenzabar, Inc. stock ownership interest held by th[e] [Family] LP has been assigned between the parties pursuant to the terms set forth in Paragraph 8(a)(iii) of this Report. Following the transfer of Jenzabar, Inc. shares to [Maginn] as provided therein, [Chai Maginn]

---

[13] Pl.'s Combined Opening Br. in Supp. of Mot. for Summ. J. and Br. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opening Br.") Ex. 2 ("Master's Report").

[14] *Id.* ¶ 8(a).

[15] *Id.* ¶¶ 8(a)(i)-(ii).

[16] *Id.* ¶ 8(a)(iii).

[17] *Id.* ¶ 8(e).

[18] *Id.*

4

shall solely retain the parties' interest in th[e] [Family] LP. The parties shall cooperate in taking all steps necessary to transfer the parties' interests in th[e] [Family] LP solely to [Chai Maginn] and remove [Maginn] therefrom (said documents to be prepared at [Chai Maginn's] sole expense).[19]

Chai Maginn has moved for the Massachusetts court to adopt the Master's Report. That motion remains pending.[20]

## C. The Special Committee

When the divorce proceedings began, Jenzabar's Board of Directors consisted of Chai Maginn, Maginn, defendant D. Quinn Mills, and Joseph San Miguel.[21] In 2019, the Board formed a Special Committee of Mills and San Miguel to settle any matters between Chai Maginn and Maginn that could affect Jenzabar amid their divorce.[22]

On August 2, 2023, following the death of San Miguel, Maginn and Mills noticed a meeting of Jenzabar's Board to be held on August 4.[23] The agenda circulated by Maginn included a discussion of "authorizing" or "re-authorizing" the Special Committee.[24] It also listed a proposal that no officer or employee of Jenzabar

---

[19] *Id.*

[20] *See* Compl. ¶ 19; *see also* Tr. of Sept. 20, 2023 Oral Arg. on Cross-Mots. for Summ. J. (Dkt. 58) ("Hr'g Tr.") 9.

[21] Compl. ¶ 17; Chai Maginn Aff. ¶¶ 10-12.

[22] Compl. ¶¶ 16-17; Chai Maginn Aff. ¶ 21.

[23] Pl.'s Opening Br. Ex. 3.

[24] *Id.*

could "retain any counsel to represent [Jenzabar] without Board approval."[25]  Chai Maginn believes that the proposed prohibition against unilaterally hiring counsel was directed at her.[26]

### D.     The August Ex Parte Order

In response to the notice, on August 3, Chai Maginn filed an emergency motion for an ex parte hearing in the divorce action.[27]  Her motion explained that the parties were awaiting a decision on the adoption of the Master's Report and that, due to San Miguel's death, emergency relief was needed to "stabilize [Jenzabar]."[28]  The motion asked that the "marital shares" of Jenzabar be "equally divid[ed] . . . without prejudice[] while the court consider[ed] and ma[de] a ruling on the Special Master's [R]eport."[29]

The same day, the Massachusetts court entered an order granting Chai Maginn's emergency motion (the "August Ex Parte Order").[30]  The August Ex Parte Order states:

> Effective immediately, any Jenzabar Inc. stock shares held by, or for the benefit of either plaintiff or defendant, shall be divided equally between plaintiff and defendant, pursuant to paragraph 8a of the

---

[25] *Id.*

[26] Chai Maginn Aff. ¶ 25.

[27] *Id.* ¶ 26; Pl.'s Opening Br. Ex. 4.

[28] Pl.'s Opening Br. Ex. 4.

[29] *Id.*

[30] Pl.'s Opening Br. Ex. 5 ("Aug. Ex Parte Order").

6

Master's Report, as Amended, dated January 4, 2023, without prejudice, until such time as th[e] Court makes a ruling on the Motion to Adopt Special Master Robert Rivers' Report (as amended).[31]

### E.       The Written Consent

Upon receipt of the August Ex Parte Order, Chai Maginn executed a written consent putatively on behalf of a "majority" of Jenzabar's stockholders (the "Written Consent").[32]    The Written Consent was signed by Chai Maginn on behalf of Jenzabar, by Chai Maginn and Li Chai as managers of the Delaware LLC, by Chai Maginn as a "[s]tockholder" of New Media II-C, and by Chai Maginn as "General Partner" of the Family LP.[33]   The Written Consent purported to remove Mills from the Jenzabar Board, effectively eliminating the Special Committee.[34]   Maginn did not sign or approve the Written Consent.[35]

Maginn and Mills went forward with the August 4 Board meeting as noticed.[36] During the meeting, Maginn told Chai Maginn that the Written Consent was "flawed."[37] Maginn also expressed his belief that the August Ex Parte Order did not

---

[31] *Id.* ¶ 1.

[32] Pl.'s Opening Br. Ex. 6.

[33] *Id.*

[34] Compl. ¶ 26; Chai Maginn Aff. ¶ 29.

[35] Maginn Aff. ¶ 4.  He asserts that he also did not authorize Chai Maginn to act on behalf of New Media II-C.  *See* Def. Robert Maginn, Jr.'s (i) Resp. to Mot. to Expedite, (ii) Opp'n to Mot. for TRO, and (iii) Mot. for Summ J. (Dkt. 8) ¶ 7 n.2.

[36] Chai Maginn Aff. ¶ 30.

[37] *Id.*

7

remove him as a General Partner of the Family LP.[38]  By a vote of two to one (Mills and Maginn for; Chai Maginn against), the Board purported to reaffirm the Special Committee's authority and reappoint Mills as the Special Committee's sole member.[39]

## F.     The Litigation

On August 8, 2023, Chai Maginn filed a Verified Complaint for Declaratory and Injunctive Relief in this court.[40]  Among other things, she asks the court to declare that the Written Consent was valid and that Mills was removed as a director.[41]  She also sought expedited proceedings and a temporary restraining order enjoining Maginn, Mills, and Jenzabar "from refusing to acknowledge the proper exercise of [Chai Maginn's] rights as majority shareholder" of Jenzabar.[42]  After a hearing, the proceedings were expedited and the parties stipulated to a status quo order.[43]

---

[38] *Id.*

[39] *Id.* ¶ 31.

[40] Dkt. 1.

[41] *Id.*

[42] Mot. for TRO (Dkt. 1) 1.

[43] Dkt. 21; *see* Dkt. 37.

On August 15, Maginn moved for summary judgment in his favor on Chai Maginn's claims.[44]  Mills joined in the motion.[45]  On August 25, Chai Maginn filed a cross-motion for summary judgment.[46]  Maginn and Mills answered Chai Maginn's complaint and Maginn filed counterclaims on August 31.[47]  After briefing was complete, the summary judgment motions were argued on September 20.[48]

## G.  The Competing LP Agreements

On August 14, Chai Maginn located a PDF file containing an executed version of the Family LP Agreement.[49]  This version of the Family LP Agreement is different from the one submitted as an uncontested exhibit in the divorce proceedings and addressed in the Master's Report and August Ex Parte Order.[50]  Although the two documents have a number of differences, several features relevant to these motions are the same.[51]

---

[44] Dkt. 8.

[45] Dkt. 42.

[46] Dkt. 26.

[47] Dkts. 36, 38.

[48] Dkts. 35, 41, 47, 53; *see* Dkt. 58.

[49] Chai Maginn Aff. ¶ 33; *id.* Ex. 10 ("Alternate LP Agreement").

[50] Aff. of Michael P. Judge in Supp. of Def. Robert Maginn, Jr.'s Mot. for Summ. J. (Dkt. 41) ("Judge Aff.") ¶¶ 2-3; *id.* Ex. A.

[51] *Compare* Alternate LP Agreement, *with* Family LP Agreement; *see also infra* Section II.B.

### H. The October Ex Parte Order

On October 12, Chai Maginn filed another ex parte emergency motion in Massachusetts, requesting that another temporary order be entered pending a decision on the adoption of the Master's Report.[52] The Massachusetts probate court granted Chai Maginn's emergency motion in a same-day ex parte order (the "October Ex Parte Order").[53] The October Ex Parte Order states:

> Paragraph 8(e) and Paragraph 8(f) of Special Master Robert Rivers' Report (as amended) dated January 4, 2023 . . . are hereby adopted and incorporated as an Order of this Court . . . The parties shall immediately sign all documents necessary to effectuate their obligations referenced in Paragraphs 8(a), (e), and (f) . . . . This Court's Order of August 3, 2023 shall continue to remain in full force and effect.[54]

Chai Maginn's counsel submitted a copy of the October Ex Parte Order to me shortly after it was granted. I subsequently asked that counsel for each party file a supplemental submission addressing whether the October Ex Parte Order affected my resolution of the cross-motions for summary judgment.[55] Counsel for Chai Maginn, Maginn, and Mills filed letters in response on October 13.[56]

---

[52] Letter from Neil R. Lapinski (Dkt. 63) Ex. A ("Oct. Ex Parte Order"). The version of the October 12 motion filed in this court is missing pages, leaving me unable to consider the full extent of relief requested.

[53] *Id.*

[54] *Id.* ¶¶ 1-3.

[55] Dkt. 64.

[56] Letter from G. Moritz Regarding Mass. Prob. Ct. Order (Dkt. 68) ("Def.'s Oct. 13 Letter"); Letter from Neil R. Lapinski Regarding Mass. Prob. Ct. Order (Dkt. 70) ("Pl.'s Oct. 13 Letter"); *see also* Dkt. 69.

## II.    ANALYSIS

The parties' cross-motions for summary judgment center on whether the Written Consent validly represented a majority of Jenzabar's voting shares.  In Chai Maginn's view, the August Ex Parte Order operated to remove Maginn as a General Partner of the Family LP, allowing her to sign the Written Consent on the Family LP's behalf.[57]  Maginn, for his part, asserts that the August Ex Parte Order addressed a division of assets but did not remove him as a General Partner of the Family LP.[58]

Summary judgment is appropriate under Court of Chancery Rule 56 when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[59]  "[T]he facts must be viewed in the light most favorable to the nonmoving party and the moving party has the burden of demonstrating that there is no material question of fact."[60]  "Where the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the

---

[57] Pl.'s Opening Br. 12-14.

[58] Def.'s Answering Br. 11-13.

[59] Ct. Ch. R. 56(c).

[60] *Alchemy LTD LLC v. Franchise League Co., LLC*, 2023 WL 4670954, at *4 (Del. Ch. July 20, 2023) (quoting *Senior Tour Players 207 Mgmt. Co. v. Golftown 207 Hldgs. Co.*, 853 A.2d 124, 126 (Del. Ch. 2004)).

11

Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[61]

As discussed below, Maginn is entitled to summary judgment in his favor. The Written Consent is invalid as a matter of law because Maginn was a General Partner of the Family LP when Chai Maginn signed it.[62] Maginn has yet to transfer his interests in the Family LP and remains a General Partner. Thus, Chai Maginn presently lacks the authority to unilaterally bind the Family LP and—by extension—a majority of Jenzabar's voting shares. The only factual dispute concerns the competing LP Agreements, which does not affect my conclusions.

## A.    The Written Consent's Invalidity

Jenzabar's bylaws permit stockholders to remove directors by written consent where the consent is signed by holders of a majority of Jenzabar's outstanding stock entitled to vote.[63] If Chai Maginn lacked the authority to unilaterally act on behalf of the Family LP, she could not control a majority of Jenzabar's voting shares. But Chai Maginn was not the Family LP's sole General Partner at the time of the Written Consent and is not at the time of this decision.

---

[61] Ct. Ch. R. 56(h).

[62] Because this issue is dispositive, I need not consider other arguments raised by the parties.

[63] Pl.'s Opening Br. Ex. 8 §§ 2.6, 2.7, 3.2.

As of August 3, Maginn remained a General Partner of the Family LP. The Master's Report was then unadopted by the Massachusetts probate court.[64] And the August Ex Parte Order provided "without prejudice" that the Jenzabar shares held by the Family LP would be divided between Maginn and Chai Maginn pursuant to paragraph 8(a) of the Master's Report.[65] That is, the August Ex Parte Order addressed the division of the Family LP's assets—not interests in the Family LP itself.[66] Maginn's status as a General Partner of the Family LP was unaffected by the division of Jenzabar shares held by the Family LP; he contributed cash for his General Partner interest.[67]

Chai Maginn contends that the August Ex Parte Order should be read more broadly to include paragraph 8(e) of the Master's Report, which concerns the

---

[64] *See Dawson v. Rogers*, 387 N.E.2d 1162, 1165 n.4 (Mass. App. Ct. 1979) ("[A] master's report . . . has no effect until it is confirmed[.]") (citations omitted); *Hardiman v. Hardiman*, 418 N.E.2d 347, 348 (Mass. App. Ct. 1981) ("To give the master's disposition any weight beyond that of a recommendation would be an abdication of the judicial function."). Although Chai Maginn contends that the probate court was "fully cognizant" of the full extent of the Master's Report when rendering its decision on her August 3 emergency motion, she only attached paragraph 8(a) of the Master's Report to her motion. *See* Maginn Aff. Ex. 6 at Attachment.

[65] *See* Aug. Ex Parte Order ¶ 1.

[66] *See* Nev. Rev. Stat. 87.4321 (1) ("A partnership is an entity distinct from its partners."); *Rosemore v. Burns*, 2021 WL 183325, at *3 (D. Nev. Jan. 15, 2021) (observing that a member of a Nevada LLC should be treated as separate and distinct from the company for purposes of personal jurisdiction).

[67] *See* Family LP Agreement at Sched. A; Alternate LP Agreement at Sched. A.

ownership of Family LP interests.[68]  The very text of the August Ex Parte Order negates Chai Maginn's argument since it only mentions paragraph 8(a).  Chai Maginn insists that paragraph 8(e) must be read into the August Ex Parte Order since paragraph 8(e) references paragraph 8(a), but that is a backward approach to incorporation by reference.[69]

To the extent that it is fairly before me, the October Ex Parte Order merits further analysis.  It expressly and "without prejudice" "adopted and incorporated" paragraph 8(e) of the Master's Report as an order of the probate court.[70]  It also states that Maginn and Chai Maginn were to "immediately sign all documents necessary" to effect the transfer of Family LP interests contemplated by paragraph 8(e) of the Master's Report.[71]

Still, the October Ex Parte Order does not retroactively validate the Written Consent.  Nor does it (or the August Ex Parte Order) automatically remove Maginn as a General Partner of the Family LP.  Even if these were final orders, Maginn would need to transfer his interests in the Family LP to Chai Maginn to effectuate

---

[68] Pl.'s Opening Br. 11-13.

[69] *Id.* at 12-13; *see also* Hr'g Tr. 27-28 (asking the court to read paragraph 8(e) into the August Ex Parte Order, even though it only discusses paragraph 8(a), because "8(e) directly references 8(a)").

[70] Oct. Ex Parte Order ¶ 1.  Based on my reading of the October Ex Parte Order, the court's order was temporary and subject to a further hearing on October 17, 2023.

[71] *Id.* ¶ 2.

the change in status. It is undisputed that he has taken no steps to do so.[72] Rather, Maginn insists that if he is required by a final order to transfer his interests, he will appeal.[73]

Maginn remains a General Partner of the Family LP. The Family LP Agreement grants each General Partner one vote.[74] Thus, without Maginn's approval, Chai Maginn lacked the authority to direct the Family LP through the Written Consent.

## B.    The Absence of a Genuine Fact Dispute

The two versions of the Family LP Agreement do not create a genuine dispute of material fact that renders summary judgment unavailable.

Regardless of the version of Family LP Agreement considered, Chai Maginn (presently) lacks the authority to unilaterally act on behalf of the Family LP. Both versions of the Family LP Agreement state on the first page that the "General

---

[72] *See* Def.'s Oct. 13 Letter; Pl.'s Oct. 13 Letter. I am not opining on whether Maginn has been required to transfer (or should not transfer) his Family LP interests. That is the province of the Massachusetts court. I am also not addressing whether the Massachusetts court has the jurisdiction to change the governance of a Nevada entity. I am observing, for purposes of the limited dispute before me regarding the governance of Jenzabar, that Maginn has not yet transferred his Family LP interests to Chai Maginn.

[73] Def.'s Answering Br. 16 (asserting that under Massachusetts law, the transfer will likely be stayed pending appeal); Def.'s Oct. 13 Letter at 2 (noting that Maginn has advised "he does not intend to sign" any transfer documents while litigating in Massachusetts, has filed an interlocutory appeal of the October Ex Parte Order, and "is prepared to exercise his full appellate rights").

[74] *See supra* note 11 and accompanying text.

Partners" of the Family LP are "Robert A. Maginn, Jr. and Ling Chai."[75] Both versions of the Family LP Agreement also provide that "[t]he business of the Partnership shall be under the exclusive control of the General Partners who shall act by a majority vote in all business affairs."[76] And both versions contemplate that for purposes of voting on such business affairs, each General Partner "shall . . . have one vote."[77]

*     *     *

My conclusion that the Written Consent was not signed on behalf of a majority of Jenzabar's voting shares is dispositive. The Written Consent is invalid.[78] Mills is a member of the Jenzabar Board and the Special Committee.[79] There are no genuine disputes of material fact indicating otherwise.

## III. CONCLUSION

For the above reasons, Maginn's motion for summary judgment is granted. Chai Maginn's cross-motion for summary judgment is denied.

---

[75] Family LP Agreement at 1; Alternate LP Agreement at 1. Both versions also reflect that, at the inception of the Family LP, Maginn contributed cash as a General Partner and Jenzabar shares as a Limited Partner. Family LP Agreement at Sched. A; Alternate LP Agreement at Sched. A.

[76] Family LP Agreement § 7.1; Alternate LP Agreement § 6.1.

[77] Family LP Agreement § 7.1; Alternate LP Agreement § 6.1.

[78] *See* 8 *Del. C.* § 228(a).

[79] *See* 8 *Del. C.* § 225(a).

16